UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MARILYN DILLARD; STEPHEN DILLARD individually; ELAINE GARCIA as guardian ad litem for CIERA DILLARD and ARIEL DILLARD,

        Plaintiffs,

    v.

VICTORIA M. MORTON ENTERPRISES, INC.; VICTORIA M. MORTON, individually; SUDDENLY SLENDER; SUDDENLY SLENDER INTERNATIONAL; PERSONAL BEAUTY UNLIMITED, INC.; RESEARCH FOUNDATION FOR BIOCHEMISTRY AND NUTRITION CORP.; PYRAMID CONSULTING AND INVESTMENT CO., INC.; HOT TICKET ENTERPRISES, INC.; DOES 1 through 100; and ROES 101 through 200, INCLUSIVE,

        Defendants.

CIV. NO. 08-1339 FCD/GGH

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the motion of defendants Victoria M. Morton Enterprises, Inc., Victoria M. Morton, Suddenly Slender, Suddenly Slender International, and Pyramid Consulting and Investment Co., Inc. ("defendants") to dismiss and

1

strike plaintiffs' complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f).[1]  Plaintiffs Marilyn Dillard, Stephen Dillard, Ciera Dillard, and Ariel Dillard ("plaintiffs") oppose the motion.  For the reasons set forth below, defendants' motion to dismiss is GRANTED in part and DENIED in part.  Plaintiffs are granted leave to amend in the respects set forth below.[2]

## BACKGROUND[3]

On or about June 18, 2004, plaintiff Marilyn Dillard entered into a Start-Up License and Distribution Agreement with defendants to sell their products and to provide body wraps to clients through her home business.  (Compl. ¶¶ 12-13).  Defendants' products purportedly aided in weight loss, anti-aging, and toxin removal.  (Id. ¶ 13).  For the body wraps, Marilyn Dillard mixed powders, including the Slender Tone Solution Powder, Slender Tone with MSM, and Gold Water with Reverse Osmosis Water, to create solutions to soak in bandages.  (Id.)  When mixing the powders, clouds of dust were present allowing plaintiffs to inhale the dust particles.  (Id.)

In or about July 2004, defendants represented to Marilyn Dillard that these products, once mixed with water, were so safe

---

[1] Defendants Personal Beauty Unlimited, Inc., Research Foundation for Biochemistry and Nutrition Corp., and Hot Ticket Enterprises, Inc. have been dismissed without prejudice.  (Order for Dismissal of Certain Defs., filed Aug. 12, 2008).

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[3] The background facts are derived from plaintiffs' complaint, filed April 7, 2008 ("Compl.").

1 to the human body that one could drink them. (Id. ¶¶ 13-14). In
2 fact, Marilyn Dillard drank some of the liquid mix at the
3 recommendation of defendants while attending their training in
4 Florida. (Id. ¶ 14). However, after performing three body
5 wraps, Marilyn Dillard developed extreme flu-like symptoms.
6 (Id.) She subsequently suffered a variety of health problems,
7 including chronic vaginal yeast infections and a miscarriage in
8 November 2004. (Id. ¶¶ 16-17). To this day, Marilyn Dillard
9 alleges that she suffers from chronic flu-like symptoms that
10 medical professionals have been unable to treat. (Id. ¶¶ 19,
11 24). As a result, she is unable to perform body wraps and
12 operate her business other than in a very limited capacity. (Id.
13 ¶ 20).

14     In or about August 2006, Marilyn Dillard learned for the
15 first time that the United States Food and Drug Administration
16 ("FDA") received complaints about the Slender Tone Solution
17 Powder, Gold Water, and/or related products causing illnesses in
18 body wrap customers. (Id. ¶ 21). Additionally, a 2001 Florida
19 Department of Health Establishment Inspection Report found that
20 defendants' creation, manufacture, design, sale and distribution
21 of its products violated federal regulations. (Id. ¶ 22). Among
22 the violations were (1) failure to maintain batch records; (2)
23 failure to maintain adequate manufacturing records; (3) failure
24 to maintain a distribution system of each product to facilitate a
25 recall; (4) failure to maintain a written testing program to
26 assess stability characteristics of products; and (5) failure to
27 maintain master and control records with a complete list of
28 components. (Id.)

1    Plaintiff Stephen Dillard was first exposed to defendants'
2 products in his home. (Id. ¶ 31). Since being exposed to
3 defendants' products, he has experienced chronic and acute flu-
4 like symptoms, chronic skin lesions, and hypersensitivity, all of
5 which have not responded to antibiotics. (Id. ¶ 32).
6    Plaintiff Ciera Dillard was approximately three years old
7 when her mother Marilyn Dillard first began working with
8 defendants' products in their home. (Id. ¶ 25). At times, Ciera
9 assisted her mother in mixing defendants' powders and was also
10 physically present in the preparation of body wrap solutions.
11 (Id. ¶ 25). Following exposure to defendants' products, Ciera
12 began experiencing extreme flu-like symptoms and empyema. (Id. ¶
13 26). In October 2004 and September 2005, Ciera was hospitalized
14 for pneumonia. (Id. ¶¶ 26-27). She continues to suffer from
15 acute flu-like symptoms, gastrointestinal issues, and
16 hypersensitivity. (Id. ¶ 28). On average, Ciera sees a
17 physician on a monthly basis for breathing problems and chest
18 pain. (Id.)
19    Plaintiff Ariel Dillard was approximately six years old when
20 she was first exposed to defendants' products in her home. (Id.
21 ¶ 29). Since being exposed to defendants' products, Ariel
22 experiences chronic and acute flu-like symptoms, extreme throat
23 irritations, forgetfulness, memory loss, reduced dexterity, and
24 hypersensitivity, which antibiotics have failed to resolve.
25    On April 7, 2008, plaintiffs filed a complaint in Sacramento
26 County Superior Court alleging the following causes of action:
27 (1) strict products liability, (2) products liability for
28

4

manufacturing and design defect,[4] (3) products liability for failure to warn, (4) fraud, (5) products liability for negligence, and (6) negligence per se.  On June 12, 2008, defendants removed the case to this court on the basis of diversity jurisdiction.

    Defendants now seek to dismiss plaintiffs' first, second, third, fifth, and sixth claims because the two-year statute of limitations applying to those claims have expired.  Defendants also seek to dismiss plaintiffs' sixth claim on the ground that California does not recognize negligence per se as an independent cause of action.  Further, defendants seek to dismiss plaintiffs' fourth claim because it fails to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b).

    In addition, defendants seek to strike the allegations in paragraphs 22 and 23 of plaintiffs' complaint because they do not constitute proper pleading as the allegations bear no relation to plaintiffs' substantive claims.  Finally, defendants seek to strike plaintiffs' fifth claim as redundant of their second claim.

**STANDARD**

**A.   Motion to Dismiss**

    On a motion to dismiss, the allegations of the complaint must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of

---

[4] Within the complaint, plaintiffs erroneously cite to their second cause of action as "Products Liability-Negligence"; however, this is a typographical error and the second cause of action should instead be for "Products Liability-Manufacturing and Design Defect".  (Pls.' Opp'n to Mot. to Dismiss & Mot. to Strike ("Opp'n"), filed Sept. 5, 2008, 16:2-3).

5

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. <u>See</u> <u>id.</u>

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1973 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. <u>Id.</u> "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002) (quoting <u>Hudson v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

**B.  Motion to Strike**

Federal Rule of Civil Procedure 12(f) enables the court by motion of a party or by its own initiative to "order stricken

6

from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The function of a 12(f) motion is to avoid the time and expense of litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Wright & Miller, Federal Practice and Procedure 2d § 1380 (1990).

Rule 12(f) motions are generally viewed with disfavor and not ordinarily granted, because they are often used to delay, and because of the limited importance of the pleadings in federal practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). A motion to strike should not be granted "unless it is clear that the matter to be stricken could have no possible bearing on the litigation." Lilley v. Charren, 936 F. Supp. 708, 713 (N.D. Cal. 1996) (citing Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

**ANALYSIS**

**A.  Motion to Dismiss**

Defendants seek to dismiss plaintiffs' complaint on three separate grounds: (1) Marilyn and Stephen Dillard's products liability and negligence claims are barred by the statute of limitations; (2) plaintiffs' negligence per se claim is not recognized as an independent cause of action under California law; and (3) plaintiffs have failed to allege their fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b).

**1.  Statute of Limitations**

Defendants move to dismiss plaintiffs' products liability and negligence claims because the statute of limitations had

7

1  expired when plaintiffs filed their complaint in April 2008.
2  With respect to Marilyn Dillard, defendants argue that the
3  statute of limitations accrued in July 2004 when Marilyn Dillard
4  experienced extreme flu-like symptoms after performing three body
5  wraps.  (Defs.' P. & A. in Supp. of Mot. to Dismiss & Mot. to
6  Strike ("Motion"), July 18, 2008, 9:5-10; Compl. ¶ 14).  As to
7  Stephen Dillard, defendants argue that there are no facts alleged
8  in the complaint supporting a date of injury within the two-year
9  limitations period or supporting delayed accrual of the claims.
10 (Motion 10:24-25).  As a result, defendants seek to dismiss
11 Marilyn and Stephen Dillard's products liability and negligence
12 claims.

     California Code of Civil Procedure section 335.1 provides a
two year statute of limitations period for "an action for . . .
injury to . . . an individual caused by the wrongful act or
neglect of another."  For tort actions, the general rule is that
a cause of action accrues when the wrongful act is done and not
when a plaintiff discovers he or she has a cause of action to
pursue.  <u>Moreno v. Sanchez</u>, 106 Cal. App. 4th 1415, 1423 (2003)
(citing <u>Neel v. Magana, Olney, Levy, Cathcart & Gelfand</u>, 6 Cal.
3d 176, 187 (1971)).  Nevertheless, California law also
recognizes the discovery rule, which postpones accrual of a cause
of action until the plaintiff discovers or has reason to discover
the cause of action.  <u>Grisham v. Philip Morris U.S.A., Inc.</u>, 40
Cal. 4th 623, 634 (2007).  A plaintiff has reason to discover a
cause of action when he or she has reason at least to suspect a
factual basis for its elements.  <u>Id.</u>  Under the discovery rule,
suspicion of one or more of the elements of a cause of action,

coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. Id. (citing Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806-807 (2005)). However, the statute of limitations may be tolled when a defendant makes fraudulent misrepresentations or conceals a cause of action from a potential plaintiff. See Cal. Civ. Proc. Code § 338(d).[5]

When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) (citing Leone v. Aetna Casualty & Surety Co., 599 F.2d 566, 567 (3d Cir. 1979)). With respect to Marilyn Dillard's claims, the complaint sets forth sufficient facts to indicate that the statute of limitations was tolled for her products liability and negligence claims. Defendants argue that the statute of limitations began to run in July 2004, after Marilyn Dillard performed three body wraps and subsequently developed extreme flu-like symptoms. However, plaintiffs allege facts to establish that the statute of limitations was tolled due to defendants' fraudulent misrepresentations concerning the safety of their products. (See Opp'n 6:21-23). Plaintiffs allege that beginning

---

[5] Section 338(d) provides a three year statute of limitations for "an action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).

9

1  in June 2004, defendants represented their products were
2  "completely healthy and safe and posed no risk to consumers".
3  (Compl. ¶ 58).  Marilyn Dillard alleges she relied on those
4  misrepresentations, and it was not until August 2006 that she
5  first learned about FDA complaints regarding defendants'
6  products.  (Opp'n 9:21-24; Compl. ¶¶ 21, 37).  These complaints
7  involved the Slender Tone Solution Powder, Gold Water, and/or
8  related products causing illnesses in body wrap customers.
9  (Compl. ¶¶ 21-22).  Thus, viewing the complaint with liberality,
10 and accepting plaintiffs' August 2006 date as the time of
11 discovery as true, plaintiffs have timely filed these claims on
12 behalf of Marilyn Dillard.  Therefore, defendants' motion to
13 dismiss Marilyn Dillard's products liability and negligence
14 claims is DENIED.
15     With respect to Stephen Dillard, defendants argue that the
16 complaint is silent as to when he was first exposed to
17 defendants' products, the date of his alleged injuries, or any
18 other necessary facts to show that the statute of limitations has
19 not expired.  (Motion 11:2-7).  Indeed, Stephen Dillard merely
20 alleges that he was exposed to defendants' products in his home,
21 and thereafter experienced "chronic and acute flu-like symptoms,
22 chronic skin lesions and hypersensitivity."  (Compl. ¶¶ 31-32).
23 The complaint gives no further details as to the time of Stephen
24 Dillard's exposure to defendants' products or any injuries
25 resulting therefrom.  Thus, on the face of the complaint, Stephen
26 Dillard's allegations are deficient to determine if his claims
27 are barred by the statute of limitations.  Although the court is
28 bound to give plaintiffs the benefit of every reasonable

1  inference on a motion to dismiss, it is not required to assume
2  that plaintiffs can prove facts that have not been alleged.  See
3  Retail Clerks Int'l Ass'n, 373 U.S. at 753 and Associated Gen.
4  Contractors of Calif., Inc., 459 U.S. at 526.  Because the
5  allegations in the complaint are unclear as to the timeliness of
6  Stephen Dillard's injuries, the court grants defendants' motion
7  to dismiss Stephen Dillard's products liability and negligence
8  claims.

9       However, the court grants plaintiffs leave to amend their
10 complaint to correct these deficiencies.  Pursuant to Rule 15(a),
11 "leave [to amend] is to be freely given when justice so
12 requires."  "[L]eave to amend should be granted unless amendment
13 would cause prejudice to the opposing party, is sought in bad
14 faith, is futile, or creates undue delay."  Martinez v. Newport
15 Beach, 125 F.3d 777, 785 (9th Cir. 1997).  Defendants make no
16 such showing here.  Thus, defendants' motion to dismiss plaintiff
17 Stephen Dillard's products liability and negligence claims as
18 untimely is GRANTED, but plaintiffs are given leave to amend.

19      **2.  Negligence Per Se**

20      Defendants move to dismiss plaintiffs' negligence per se
21 claim because it is not an independent cause of action under
22 California law.  Defendants are correct that negligence per se is
23 an evidentiary doctrine.  Quiroz v. Seventh Ave. Ctr., 140 Cal.
24 App. 4th 1256, 1285-86 (2006) ("to apply negligence per se is not
25 to state an independent cause of action. . . . Instead it
26 operates to establish a presumption of negligence for which the
27 statute serves the subsidiary function of providing evidence of
28 an element of a preexisting common law cause of action")

11

(citations omitted). Therefore, negligence per se establishes a presumption of negligence only when a viable claim for negligence exists. <u>Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.</u>, 62 Cal. App. 4th 1166, 1178 (1998) (citing <u>Sierra-Bay Fed. Land Bank Ass'n. v. Superior Court</u>, 227 Cal. App. 3d 318, 333 (1991)).

Negligence per se has been codified in California Evidence Code section 669, which provides that the failure of a person to exercise due care is presumed if:

> (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Therefore, Evidence Code section 669 "merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation." <u>Quiroz</u>, 140 Cal. App. 4th at 1285 (citing <u>Peart v. Ferro</u>, 119 Cal. App. 4th 60, 80 n.11 (2004)).

Accordingly, a claim for negligence per se cannot stand on its own. Plaintiffs must present a viable negligence claim in their complaint before the presumption of negligence may apply. Because plaintiffs adequately assert a products liability claim based on negligence (their fifth cause of action), negligence per se may be properly alleged, as a theory of liability, in order to show that defendants failed to exercise due care. However,

1  plaintiffs may not separately plead negligence per se as an
2  independent cause of action.
3       Therefore, defendants' motion to dismiss plaintiffs'
4  negligence per se claim is GRANTED.  However, the court finds
5  that the substantive allegations supporting the negligence per se
6  claim shall be treated as incorporated into the fifth cause of
7  action because negligence per se is a viable theory of liability
8  relating to plaintiffs' products liability claim based on
9  negligence.
10      **3.   Fraud**
11      Defendants argue that plaintiffs fail to specify the alleged
12 misrepresentations made to Stephen, Ciera, and Ariel Dillard and
13 their justifiable reliance resulting from any misrepresentations.
14 (Motion 6:17-19).  In addition, defendants argue that the
15 particularity requirement of Federal Rule of Civil Procedure 9(b)
16 is not satisfied because plaintiffs do not specify which
17 defendant made the alleged misrepresentations.  (Motion 7:17-21).
18 As a result, defendants contend the complaint fails to inform
19 them of the basic nature and grounds of the fraud claim asserted
20 by plaintiffs Stephen, Ciera, and Ariel Dillard, and thus, the
21 fraud claim as to these plaintiffs should be dismissed.  (Motion
22 8:5-6).
23      Rule 9(b) of the Federal Rules of Civil Procedure provides
24 that "[i]n all averments of fraud or mistake, the circumstances
25 constituting fraud or mistake shall be stated with
26 particularity."  In order to comply with the requirements of Rule
27 9(b), the circumstances constituting the alleged fraud "must be
28 'specific enough to give defendants notice of the particular

13

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  The plaintiff "must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." Id. (quoting Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in original).

In a diversity case, the substantive elements of fraud are determined by state law.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003).  However, those elements must be pled with particularity as required by Rule 9(b).  Id.  The elements of a cause of action for misrepresentation or fraud under California law are: "1) a misrepresentation (false representation, concealment, or nondisclosure); 2) knowledge of falsity (or scienter); 3) intent to defraud, i.e., to induce reliance; 4) justifiable reliance; and 5) resulting damage." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004) (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)).

First, with respect to the fraud claims asserted by Stephen, Ciera, and Ariel Dillard, these plaintiffs may allege fraud by virtue of the alleged misrepresentations made by defendants to

14

Marilyn Dillard.  The California Supreme Court, in <u>Randi W. v. Muroc Joint Unified School District</u>, 14 Cal. 4th 1066 (1997), held that a third party could claim fraud for physical harm resulting from misrepresentations made to another party.  In <u>Randi W.</u>, the minor plaintiff was sexually assaulted by her vice-principal and sued the defendant school districts for, inter alia, fraud.  <u>Randi W.</u>, 14 Cal. 4th at 1071, 1073.  The plaintiff alleged that the defendants had written favorable letters of recommendation for the vice-principal, despite having knowledge about his past incidents of sexual misconduct and impropriety, which resulted in the vice-principal's hiring at the plaintiff's school.  <u>Id.</u> at 1071-72.  The court determined that the defendants owed the plaintiff "a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to the third persons."  <u>Id.</u> at 1081.  In reaching this conclusion, the court relied on section 310 of the Restatement Second of Torts, which provides:

> An actor who makes a misrepresentation is subject to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and (b) knows (i) that the statement is false, or (ii) that he has not the knowledge he professes.

The court determined that section 310 applied to "cases in which third persons are endangered by [a] misrepresentation."  <u>Id.</u> at 1084.

Similarly in this case, Stephen, Ciera, and Ariel Dillard do

15

not allege that defendants made any direct misrepresentations to them.  Rather, the complaint alleges only misrepresentations by defendants to Marilyn Dillard regarding the health and safety of defendants' products.  Plaintiffs assert that defendant Victoria Morton, individually and on behalf of other defendants, represented that defendants' products for "weight loss, inch loss, 'toxin' removal, and skin tightening/firming were so safe that consumers and licensees could drink the products."  (Compl. ¶ 57).  These representations were made to Marilyn Dillard at mandatory training sessions and seminars she attended for new licensees in June 2004.  (Id.)  However, plaintiffs allege that defendants knew as far back as 2000 that such statements were false because of complaints received about their products.  (Id. at ¶¶ 21-22, 62).  Pursuant to the decision in Randi W., defendants may be liable to third parties, i.e., Stephen, Ciera, and Ariel Dillard because they were endangered by defendants' alleged misrepresentations regarding the safety of their products.  Therefore, because plaintiffs allege that defendants' misrepresentations were false in light of defendants' knowledge about the FDA and Department of Health violations, plaintiffs have adequately pled misrepresentation.

Second, contrary to defendants' protestations, Stephen, Ciera, and Ariel Dillard have adequately pled the reliance element of a fraud claim.  In Randi W., the court addressed whether the plaintiff had adequately pled reliance because she did not actually rely on the recommendation letters; instead, the plaintiff's school had relied on the letters in hiring the vice-principal.  Randi W., 14 Cal. 4th at 1084.  The court

16

1  concluded that the defendants had allegedly made
2  misrepresentations that resulted in physical harm to the
3  plaintiff by reason of an act done by the plaintiff's school,
4  i.e., hiring the vice-principal, in reliance on the truth of the
5  positive representations included in the recommendation letters.
6  Id.  Therefore, the court held the plaintiff did not need to
7  plead *her* actual reliance on the recommendation letters since her
8  injuries resulted from "action that the recipient of defendants'
9  misrepresentations took in reliance on them."  Id. at 1085.
10      The facts of Randi W. are analogous to the facts of this
11 case.  Defendants argue that Stephen, Ciera, and Ariel Dillard
12 have failed to demonstrate any justifiable reliance resulting
13 from defendants' alleged misrepresentations.  As in Randi W.,
14 these plaintiffs did not actually rely on the defendants'
15 misrepresentations as to the safety of defendants' products;
16 however, Marilyn Dillard allegedly relied on these
17 misrepresentations in exposing her family to defendants' products
18 in her home.  As a result of the exposure, Stephen, Ciera, and
19 Ariel Dillard claim that they suffered physical harm such as
20 extreme flu-like symptoms and hypersensitivity to defendants'
21 products.  Therefore, Stephen, Ciera, and Ariel Dillard do not
22 need to plead actual reliance on defendants' alleged
23 misrepresentations because their injuries resulted from action
24 that Marilyn Dillard took in using and exposing her family to
25 defendants' products in her home, in reliance on the safety of
26 defendants' products.  Thus, defendants' motion to dismiss
27 plaintiffs' fraud claim with respect to Stephen, Ciera, and Ariel
28 Dillard is DENIED.

1  In addition, defendants argue that plaintiffs fail to
2 specify which defendant made the alleged misrepresentations.
3 However, plaintiffs have alleged the subject misrepresentations
4 were made by Victoria M. Morton, individually and on behalf of
5 each defendant. (Compl. ¶¶ 57-58). Plaintiffs also allege that
6 misrepresentations were made during defendants' training sessions
7 and seminars and in their written literature. (<u>See id.</u>) Because
8 this information is sufficient to give each defendant notice of
9 the fraud charged, Rule 9(b) is satisfied.
10  Thus, defendants' motion to dismiss plaintiffs' fraud claim
11 is DENIED.
12 **B.   <u>Motion to Strike</u>**
13  Defendants move to strike paragraphs 22 and 23 of
14 plaintiffs' complaint, discussing a Florida Department of Health
15 Establishment Inspection Report and various FDA violations
16 regarding defendants' products, because they contain incomplete
17 and immaterial allegations. Defendants argue that these
18 paragraphs do not supply background or historical information
19 relevant to plaintiffs' claims. However, to find a matter
20 "immaterial" requires that it have no bearing on the claims for
21 relief being pleaded. <u>See</u> <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d
22 1524, 1527 (9th Cir. 1993), rev'd on other grounds, <u>Fogerty v.
23 Fantasy, Inc.</u>, 510 U.S. 517, 521 (1994). Here, paragraphs 22 and
24 23 support plaintiffs' assertion of a presumption of negligence
25 based on defendants' alleged violations of federal statutes. As
26 discussed, the court dismisses plaintiffs' negligence per se
27 cause of action; however, the court does not preclude plaintiffs
28 from relying on a negligence per se theory with regard to their

1 negligence claim based on products liability.  Because paragraphs
2 22 and 23 are relevant to establish a presumption of negligence
3 under a negligence per se theory, the court denies defendants'
4 motion to strike allegations in the complaint material to that
5 theory.
6      Defendants also move to strike plaintiffs' fifth claim for
7 "Products Liability-Negligence" as redundant because it mirrors
8 plaintiffs' second claim for "Products Liability-Negligence".  A
9 "redundant" matter is one that consists of allegations that
10 constitute a needless repetition of other averments or which are
11 foreign to the issue to be denied.  Wilkerson v. Butler, 229
12 F.R.D. 166, 170 (E.D. Cal. 2005) (citing Gilbert v. Eli Lilly
13 Co., Inc., 56 F.R.D. 116, 121 (D. P.R. 1972)).  In the body of
14 plaintiffs' complaint, both the second and fifth claims are
15 labeled as "Products Liability-Negligence"; however, the content
16 of the allegations in those claims is not duplicative.  Indeed,
17 the caption of the complaint correctly identifies plaintiffs'
18 second claim as "Products Liability (Manufacturing and Design
19 Defect)" and plaintiffs' fifth claim as "Products Liability
20 (Negligence)".  Plaintiffs acknowledge the body of the complaint
21 contains a typographical error and request leave to amend.
22 (Opp'n 15:26-27).  However, the court recognizes this error here
23 and does not require plaintiffs to amend their complaint.  The
24 court will read plaintiffs' second cause of action as pleading a
25 products liability claim based on manufacturing and design
26 defect, and plaintiffs' fifth cause of action as pleading a
27 products liability claim based on negligence.
28

Therefore, defendants' motion to strike paragraphs 22 and 23 of the complaint and plaintiffs' fifth claim for "Products Liability-Negligence" is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically:

1. Defendants' motion to dismiss plaintiff Stephen Dillard's products liability and negligence claims as untimely is GRANTED with leave to amend. In all other respects as to the timeliness of these claims, defendants' motion is DENIED.

2. Defendants' motion to dismiss plaintiffs' negligence per se claim is GRANTED.

3. Defendants' motion to dismiss plaintiffs' fraud claim is DENIED.

4. Defendants' motion to strike paragraphs 22 and 23 of plaintiffs' complaint and plaintiffs' fifth claim for products liability based on negligence is DENIED.

Plaintiffs shall file and serve their first amended complaint within 20 days of the date of this Order. Defendants shall have 30 days after service thereof to file their response.

IT IS SO ORDERED.

DATED: October 7, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE